******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NANCY BURTON *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(AC 36821)

Gruendel, Alvord and Mullins, Js.

*Argued September 11—officially released December 15, 2015*

(Appeal from Superior Court, judicial district of New
Britain, Prescott, J.; Young, J.)

*Nancy Burton*, self-represented, the appellant
(plaintiff).

*Kirsten S. P. Rigney*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney gen-
eral, for the appellee (defendant Commissioner of

Energy and Environmental Protection).

*Opinion*

GRUENDEL, J. The sole issue in this appeal is whether the plaintiff, Nancy Burton, had standing to appeal from a decision of the Freedom of Information Commission (commission) declining to impose a civil penalty against the defendant Daniel Esty, then Commissioner of Energy and Environmental Protection.[1] We conclude that the plaintiff lacked standing and affirm the trial court's judgment dismissing the appeal.[2]

The following undisputed facts are relevant. On August 23, 2012, the plaintiff e-mailed the defendant a request pursuant to the Freedom of Information Act (FOIA) (§ 1-200 et seq.), for all records held by the Department of Energy and Environmental Protection concerning the operation of Millstone Nuclear Power Station during two of the hotter months (July and August) of that year. FOIA requires a response within four business days; see General Statutes § 1-206 (a); and the defendant did not timely reply. On September 4, 2012, the plaintiff filed a complaint with the commission.

The commission held hearings in February and April of 2013, at which the plaintiff presented testimony, exhibits and argument, asking the commission to impose a civil penalty against the defendant for his alleged violation of FOIA. The commission had the power to impose a civil penalty, as the relevant provision of FOIA lists several ordinary forms of relief the commission "may" provide then states that "[i]n addition . . . the commission may, *in its discretion*, impose . . . a civil penalty of not less than twenty dollars nor more than one thousand dollars," payable to the state, against public officials who violate FOIA without reasonable grounds, or against litigants who pursue frivolous FOIA complaints solely to harass an agency. (Emphasis added.) General Statutes § 1-206 (b) (2).

In June, 2013, the commission issued a decision holding that the defendant had violated FOIA by failing to timely reply to the plaintiff's FOIA request. The commission found that although the defendant had not replied in time, he had given the plaintiff the records she sought in October, 2012, one and one-half months after her request and four months before the first commission hearing. The commission found that the defendant had since established and reviewed protocols to ensure future compliance with FOIA. After considering the entire record, the commission ordered that: "[h]enceforth, the [defendant] shall comply promptly with [FOIA]." The commission did not order the defendant to turn over any additional documents, having found that he had already complied in October, 2012, and it did not impose a civil penalty against the defendant.

The plaintiff appealed to the Superior Court, stating that "[t]he [commission] acted arbitrarily, capriciously

and illegally in declining to impose a civil penalty or other relief as requested by the plaintiff in that: (a) The record revealed sufficient and proper cause for imposition of a civil penalty; and (b) [t]he [commission] erred in [not] ordering a complete record (to wit, the compelled testimony of [the defendant]) to provide an appropriate record for the [commission's] consideration of a civil penalty." The defendant moved to dismiss the plaintiff's appeal on the ground that she lacked standing to challenge the commission's failure to impose a civil penalty. The court granted the defendant's motion. The plaintiff then appealed to this court, raising the issue of whether she "lack[ed] standing to appeal the [commission's] decision sustaining her appeal to it but denying the remedy sought, a civil penalty."[3]

We begin with the standard of review. As this appeal arises from a motion to dismiss, the question is whether the pleadings, if presumed true and construed in favor of the plaintiff, set forth sufficient facts to establish that the plaintiff had standing. See *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, 312 Conn. 265, 273, 92 A.3d 247 (2014). That question is one of law, over which our review is plenary. Id.

The requirement that a party have standing is fundamental. "[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim." (Internal quotation marks omitted.) *Lewis* v. *Slack*, 110 Conn. App. 641, 643, 955 A.2d 620, cert. denied, 289 Conn. 953, 961 A.2d 417 (2008). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Sadloski* v. *Manchester*, 228 Conn. 79, 84, 634 A.2d 888 (1993), on appeal after remand, 235 Conn. 637, 668 A.2d 1314 (1995). "[T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Slack*, supra, 643–44.

Standing may derive from either classical or statutory aggrievement. *Andross* v. *West Hartford*, 285 Conn. 309, 322, 939 A.2d 1146 (2008). Aggrievement is also expressly required by the statutes that govern a FOIA appeal. See General Statutes § 1-206 (d) ("[a]ny party *aggrieved* by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183" [emphasis added]); General Statutes § 4-183 (a) ("[a] person who has exhausted all administra-

tive remedies available within the agency and who is *aggrieved* by a final decision may appeal to the Superior Court as provided in this section" [emphasis added]). We address each type of aggrievement in turn.

## I

Classical aggrievement is the ordinary judicial analysis of whether the facts alleged include conduct that has injured or likely will injure a specific, personal, legal interest of the party. *McWeeny* v. *Hartford*, 287 Conn. 56, 64, 946 A.2d 862 (2008); see also *Kelly* v. *Freedom of Information Commission*, 221 Conn. 300, 308–309, 603 A.2d 1131 (1992) (applying classical aggrievement test in FOIA appeal). Here, the question is whether the commission's decision not to impose a civil penalty against the defendant injured a specific, personal, legal interest of the plaintiff. We conclude that it did not. Even if we assume, without deciding, that an agency's failure to impose a civil penalty against a party's opponent can aggrieve the party, it does not do so where, as here, the underlying statute grants the party no right to that penalty as a remedy.

## A

At the threshold, this case presents a novel issue under Connecticut law—whether an agency's failure to impose a civil penalty against a party's opponent can *ever* aggrieve that party when the penalty is payable not to her but to the state. We do not resolve this broad issue and instead decide the case on the narrower ground that, at a minimum, a party is not aggrieved if the underlying statute granted her no right to the civil penalty as a remedy.

Two federal cases, which discuss the broader issue in the context of standing under article three of the United States constitution, also offer guidance on the narrower issue. We note that we "are not required to apply federal precedent in determining the issue of aggrievement." *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 494, 400 A.2d 726 (1978). Nevertheless, standing under federal law often informs our discussion of standing under Connecticut law.[4] See, e.g., id., 492–94 (quoting various federal cases); *Andross* v. *West Hartford*, supra, 285 Conn. 328–29 (same); *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 185, 740 A.2d 813 (1999) (noting that Connecticut has adopted federal test for representational standing); but see *State* v. *McElveen*, 261 Conn. 198, 212, 802 A.2d 74 (2002) (rejecting federal mootness test in favor of more liberal standard); *Andross* v. *West Hartford*, supra, 329–35 (rejecting federal expansion of standing to permit widely shared injury in fact).

In the first case, the court held that a plaintiff lacked standing to seek a civil penalty against a company for violations of a federal statute where those violations had wholly ceased by the time the complaint was filed.

*Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 105–106, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). The statute in that case expressly included the civil penalty in the category of "[r]elief" that a citizen plaintiff could seek.[5] See 42 U.S.C. § 11046 (c).

In the second case, the court held that a plaintiff had standing to seek a civil penalty against a company for violations of a federal statute, where those violations were ongoing at the time the complaint was filed. *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 188–89, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). The statute in that case, while containing no section expressly labeled "relief," included the civil penalty without distinction in a sentence listing forms of relief, at the end of the subsection defining the citizen plaintiff's cause of action; it also used language very similar to that of the statute in *Steel Co.*[6] See 33 U.S.C. § 1365 (a).

Both of these cases assumed that Congress intended the relevant statute to grant the citizen plaintiff a right to the civil penalty as a remedy. Indeed, the majority in *Friends of the Earth, Inc.*, relied heavily on legislative history to that effect. See *Friends of the Earth, Inc.*, v. *Laidlaw Environmental Services, (TOC), Inc.*, supra, 528 U.S. 185.

In light of these cases, we assume without deciding the broader issue—that, under Connecticut law, an agency's failure to impose a civil penalty against a party's opponent can aggrieve the party. We now hold, under Connecticut law, that at a minimum, if a statute does not grant a party the right to seek a civil penalty as a remedy, then that party is not aggrieved by an agency's failure to impose the penalty against her opponent. This holding is in accord with federal precedent and is a logical extension of our traditional rule that a plaintiff must have a "legal interest" in the relief sought. See *McWeeny* v. *Hartford*, supra, 287 Conn. 64.

B

Turning then to the plaintiff's claim, we conclude that although she has alleged violations of FOIA that were ongoing at the time she filed her complaint, she still is not aggrieved by the commission's nonimposition of a civil penalty because Connecticut's FOIA does not authorize citizen plaintiffs to seek a civil penalty as a remedy. The plaintiff thus has no legal interest at stake.

Whereas the statutes in *Steel Co.* and *Friends of the Earth, Inc.*, either labeled the civil penalty explicitly as one form of "relief" a citizen plaintiff could seek, or labeled it implicitly by grouping it without distinction with the other forms of relief a citizen plaintiff could seek, the Connecticut FOIA is different. It lays out two groups of actions the commission may take in a case.[7] First, the commission "may" confirm an agency action, declare void certain agency actions, and order produc-

tion or copying of public records. General Statutes § 1-206 (b) (2). This first group is separated from a second group by the words "[i]n addition." Second, the commission "may, *in its discretion*," impose a civil penalty against agency officials who violate FOIA without reasonable grounds or citizen plaintiffs who use FOIA solely to harass agencies. (Emphasis added.) General Statutes § 1-206 (b) (2). The text of Connecticut's FOIA thus delineates two groups of actions the commission may take: (1) ordinary relief a party may seek; and (2) additional tools that the commission may employ as necessary, in its discretion, but to which neither party has a legal right or interest.

There is one exception to this pattern. Section 1-206 (b) (2) includes one instance of the "may, in its discretion" language in the first group, stating that the commission "*may* . . . order the agency to provide relief that the commission, *in its discretion*, believes appropriate to rectify the denial of any right conferred by the Freedom of Information Act." (Emphasis added.) General Statutes § 1-206 (b) (2). We do not believe that this negates the overall pattern, for three reasons.

First and most importantly, the "may . . . order" clause twice paints the commission action it authorizes as "relief," both explicitly, by calling it "relief," and, implicitly, by stating that such action is "to rectify the denial of any right" under FOIA. The two civil penalty clauses in the second group lack such language.

Second, on a more technical level, the syntax of the "may . . . order" clause differs from that of the two civil penalty clauses. Whereas the two civil penalty clauses directly state that imposing a penalty is "in [the commission's] discretion," the "may . . . order" clause uses the "in its discretion" language to modify not the primary clause authorizing the commission to order relief but rather the dependent clause qualifying such relief as that which "the commission, *in its discretion*, believes appropriate . . . ." (Emphasis added.) General Statutes § 1-206 (b) (2). The "in its discretion" language in the "may . . . order" clause thus seems to serve a different role, authorizing the commission to pursue a wide range of injunctive remedies rather than separating out relief from nonrelief.

Third and finally, the injunctive relief authorized by the "may . . . order" clause is a traditional remedy, whereas a civil penalty payable to the state is not. See *Steel Co.* v. *Citizens for a Better Environment*, supra, 523 U.S. 105–106 (civil penalties "would [not] serve to reimburse [defendant] for losses caused by the late reporting, or to eliminate any effects of that late reporting upon the [defendant]"). We are thus reluctant to infer that the civil penalty is a remedy without strong evidence that the legislature intended it to be one. Here, the overall text and structure of § 1-206 (b) (2) reinforces the notion that the injunction is a remedy but

the penalty is not.

Within this overall framework of FOIA relief versus FOIA discretionary tools, the civil penalty that the plaintiff seeks here falls into the second category—discretionary tools. She has no right to it as a remedy. The commission's decision not to impose it thus violates no legal interest of the plaintiff. She is not classically aggrieved.[8]

## II

The other type of aggrievement that may establish standing is statutory aggrievement. Unlike classical aggrievement, statutory aggrievement exists by legislative fiat—where the legislature has enacted a statute that confers standing on anyone who falls within a certain group. *McWeeny* v. *Hartford*, supra, 287 Conn. 64–65. We conclude that the plaintiff is not statutorily aggrieved under any of the statutes she cites.

The quintessential example of statutory aggrievement is in the zoning context, where General Statutes § 8-8 confers statutory standing to appeal from a zoning board decision on anyone who owns property within one hundred feet of the zoned land.[9] *Abel* v. *Planning & Zoning Commission*, 297 Conn. 414, 428, 998 A.2d 1149 (2010), legislatively overruled on other grounds by Public Act No. 12-146 to specify that this standing requirement only applies to Connecticut landowners.[10] Similarly, the Connecticut Environmental Protection Act of 1971, General Statutes § 22a-14 et seq., confers statutory standing to intervene in any agency proceeding or judicial review thereof on anyone who files a complaint alleging that the proceeding involves conduct likely to pollute natural resources.[11]

The plaintiff cites various provisions in Connecticut's Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., and FOIA that allegedly grant her statutory standing to appeal from the commission's nonimposition of a civil penalty. All provisions that she cites, but one, are inapposite because they concern not standing but rather remedies or substantive grounds for reversal. See General Statutes § 4-183 (j) (substantive grounds on which Superior Court may reverse agency decision); General Statutes § 4-183 (k) (remedies available if Superior Court reverses agency decision); General Statutes § 1-206 (b) (2) (remedies available if commission reverses agency decision).

The last provision she cites is inapposite for a different reason—it concerns standing to appeal *to the commission* from an agency decision to withhold records. See General Statutes § 1-206 (b) (1). That is not the issue before us. Standing to file a complaint with the commission does not automatically grant a person standing to appeal from the commission's decision to the Superior Court. *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*,

supra, 312 Conn. 280 ("[m]ere status . . . as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purposes of appellate review" [internal quotation marks omitted]). The plaintiff has failed to cite any statutory provision giving her standing to appeal to the Superior Court from the commission's failure to impose a civil penalty. Accordingly, she has not established that she is statutorily aggrieved.

### III

Because the plaintiff has established neither classical nor statutory aggrievement, she lacks standing to appeal from the commission's failure to impose a civil penalty. See *Andross* v. *West Hartford*, supra, 285 Conn. 322–24. We thus affirm the judgment of dismissal. "[T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Slack*, supra, 110 Conn. App. 643–44.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the Freedom of Information Commission is also a defendant on appeal, in this opinion our references to the defendant are to Daniel Esty, who alone moved to dismiss the appeal for lack of standing.

[2] The plaintiff raised a second claim in her objection to the defendant's motion to dismiss before the Superior Court and in her reply brief before this court, namely, that she had not received all the documents from her Freedom of Information Act request. She failed, however, to distinctly raise this claim in the first instance in either her appeal from the commission to the Superior Court, or her appeal from the Superior Court to this court, both of which sought only "*a civil penalty*" or additional hearings "to provide an appropriate record for the [commission's] consideration of *a civil penalty*." (Emphasis added.) We thus decline to review the plaintiff's missing documents claim. See *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010) (issue inadequately briefed when delineated only in reply brief).

[3] The court dismissed the plaintiff's appeal from the commission's decision on two grounds: (1) lack of standing; and (2) lack of ripeness. The plaintiff properly raised both grounds in her appeal to this court. We do not address ripeness, however, because our conclusion that the plaintiff lacked standing disposes of the appeal.

[4] Admittedly, the United States Supreme Court analyzes the issue slightly differently from the way it is done by Connecticut courts. Whereas we ask if the agency decision has injured a legal interest of the plaintiff, the United States Supreme Court asks if reversing the agency decision would redress the underlying injury to the plaintiff. Compare *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 524–26, 119 A.3d 541 (2015), with *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185–87, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

[5] 42 U.S.C. § 11046 (c) provides in relevant part: "Relief. The district court shall have jurisdiction . . . to enforce the [reporting] requirement concerned and to impose any civil penalty provided for violation of that requirement. The district court shall have jurisdiction . . . to order the Administrator to perform the act or duty concerned."

[6] 33 U.S.C. § 1365 (a) provides in relevant part: "Authorization; jurisdiction . . . . [A]ny citizen may commence a civil action on his own behalf—(1) against any person . . . alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary . . . . The

district courts shall have jurisdiction . . . to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319 (d) of this title."

[7] General Statutes § 1-206 (b) (2) provides: "In any appeal to the Freedom of Information Commission under subdivision (1) of this subsection or subsection (c) of this section, the commission may confirm the action of the agency or order the agency to provide relief that the commission, in its discretion, believes appropriate to rectify the denial of any right conferred by the Freedom of Information Act. The commission may declare null and void any action taken at any meeting which a person was denied the right to attend and may require the production or copying of any public record. In addition, upon the finding that a denial of any right created by the Freedom of Information Act was without reasonable grounds and after the custodian or other official directly responsible for the denial has been given an opportunity to be heard at a hearing conducted in accordance with sections 4-176e to 4-184, inclusive, the commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars. If the commission finds that a person has taken an appeal under this subsection frivolously, without reasonable grounds and solely for the purpose of harassing the agency from which the appeal has been taken, after such person has been given an opportunity to be heard at a hearing conducted in accordance with sections 4-176e to 4-184, inclusive, the commission may, in its discretion, impose against that person a civil penalty of not less than twenty dollars nor more than one thousand dollars. The commission shall notify a person of a penalty levied against him pursuant to this subsection by written notice sent by certified or registered mail. If a person fails to pay the penalty within thirty days of receiving such notice, the superior court for the judicial district of Hartford shall, on application of the commission, issue an order requiring the person to pay the penalty imposed. If the executive director of the commission has reason to believe an appeal under subdivision (1) of this subsection or subsection (c) of this section (A) presents a claim beyond the commission's jurisdiction; (B) would perpetrate an injustice; or (C) would constitute an abuse of the commission's administrative process, the executive director shall not schedule the appeal for hearing without first seeking and obtaining leave of the commission. The commission shall provide due notice to the parties and review affidavits and written argument that the parties may submit and grant or deny such leave summarily at its next regular meeting. The commission shall grant such leave unless it finds that the appeal: (i) Does not present a claim within the commission's jurisdiction; (ii) would perpetrate an injustice; or (iii) would constitute an abuse of the commission's administrative process. Any party aggrieved by the commission's denial of such leave may apply to the superior court for the judicial district of Hartford, within fifteen days of the commission meeting at which such leave was denied, for an order requiring the commission to hear such appeal."

[8] In support of her argument that she is aggrieved, the plaintiff cites only one case—*Kaz* v. *Freedom of Information Commission*, Superior Court, judicial district of New Britain, Docket No. CV-00-05039425-S (June 26, 2001). That case is neither binding nor relevant. First, trial court decisions do not bind this court. *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 831 n.2, 798 A.2d 445 (2002). Second, the court in *Kaz* held only that the commission's denial of "civil penalties *and* access to [requested documents]" constituted aggrievement. (Emphasis added.) *Kaz* v. *Freedom of Information Commission*, supra. Nowhere did the court say that the commission's nonimposition of a civil penalty alone could constitute aggrievement, which is the issue here.

[9] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a [zoning] board . . . may take an appeal to the superior court," and § 8-8 (a) (1) provides in relevant part that " 'aggrieved person' includes any person owning land in this state that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

[10] Section 8-8 (a) was amended by No. 12-146, § 1, of the 2012 Public Acts, which made technical changes to the statute that are not relevant to this appeal. For purposes of clarity, we refer to the current revision of the statute.

[11] General Statutes § 22a-19 (a) (1) provides in relevant part: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for

judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

————————————————————